IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| AMERICAN GREEN TECHNOLOGY, INC., | § § § | CASE NO. 18-34728 |
| | § | (Chapter 11) |
| Debtor. | § | |

**RESPONSE TO USHIO AMERICA, INC.'S EMERGENCY MOTION TO QUASH
THE SUBPOENA DUCES TECUM OF AIRGUIDE MFG MS, LLC AND
DAVE PETERSON AND REQUEST FOR SANCTIONS**

(Relates to Docket Nos. 29 and 30)

TO THE HONORABLE JEFF BOHM,
UNITED STATES BANKRUPTCY JUDGE:

Airguide Mfg MS, LLC and Dave Peterson's, petitioning creditors and parties requesting records ("**Requestors**"), file this *Response to Ushio America, Inc.'s Emergency Motion to Quash the Subpoena Duces Tecum of Airguide Mfg MS, LLC and Dave Person and Request for Sanctions* and in support thereof, respectfully states as follows:

**Jurisdiction, Venue and Constitutional Authority**

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is appropriate in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).

2.  On the afternoon of Friday, November 30, 3018, the Court set a hearing for December 18, 2018 (Doc. No. 25) where the Court advised parties that the issue of whether the case should be dismissed or converted would be discussed and specifically contemplated in the Order that the hearing may be an evidentiary hearing.

{282045/00005/01278715.DOCX 1 }                1

3.  The Requestors' subpoena duces tecum was properly served under Rule 45 to Ushio. *See,* **Exhibit A**. The subpoena requested records relevant to the propriety of dismissing the case and/or converting the case which are unequivocally core issues.

4.  The Court's Order setting the December 18, 2018 hearing stated:

> **ORDER SETTING STATUS CONFERENCE FOR DECEMBER 18, 2018 AT 11:00 A.M.**
> **[Doc. No. 1]**
>
> The Court has reviewed the docket sheet of this case and wants to hold a status conference on Tuesday, December 18, 2018, at 11:00 A.M. At a minimum, one of the issues that this Court will raise is whether this case should be dismissed or converted to a Chapter 7 case. Any party in interest who wants to introduce evidence must appear in court; otherwise, telephonic appearances will be permitted. It is therefore:
>
> ORDERED that this Court will hold a status conference in this case on December 18, 2018, at 11:00 A.M.
>
> Signed on this 30th day of November, 2018.

Doc. No. 25.

5.  The Court has constitutional authority to enter a final order in this matter. To the extent the Court determines it does not have constitutional authority to enter a final order in this matter, Requestors consent to the entry of a final order by this Court.

## FACTUAL BACKGROUND

**A.  General Background**

6.  This case was initiated by an involuntary petition on August 28, 2018. The Debtor has valuable inventory and Intellectual Property relating to special light fixtures which help purify the air in hospitals and other facilities.

7.  The involuntary petition was not contested by any creditor. A hearing was set on October 2, 2018, for the entry of an Order for Relief. Several creditors were present at the hearing including Ushio. An Order for Relief was entered on October 2, 2018. (Doc. No. 17).

8. Shortly before the Order for Relief was entered, Hiroo Kashara, a Board member appointed by Ushio America, Inc. ("Ushio"), resigned from the Board leaving three Board members which included Shinji Kameda who was appointed by Ushio; Danny Bogar who is the President; and, Nolan Lehmann. At that time, the Debtor proposed to retain Mr. Matthew Hoffman who required a modest retainer.

9. No deadline has been set for the filing of proof of claims in this case yet. However, many creditors with notice of the Bankruptcy have filed their proof of claims. Ushio has not filed a claim but has asserted the Debtor's cash is its cash collateral and that it has a security interest over most assets. *See,* Doc. No. 24.

10. Further, reportedly, the Debtor was being controlled by Ushio pre-petition despite Ushio being a major lender of the Debtor and Ushio required the Debtor to shutter its operations despite substantial demand for AGT's product.

11. While Ushio claims to have a security agreement over the Debtor's assets including cash collateral, it is uncertain what transfers were made to Ushio prior to the Bankruptcy favoring it over other creditors. Ushio has not acted to help preserve the value of the estate pre or post-petition.

12. Ushio is aware that the Debtor has failed to pay rent where the inventory is located. The landlord sent a prepetition demand letter for the outstanding amounts. Ushio also knows that the Debtor does not have insurance for the inventory. On information and belief, Ushio would not consent to the sale of the remaining inventory when potential offers were made post-petition when the Debtor's management was trying to mitigate any potential losses. The Debtor has been between a rock and a hard place with its inability to retain counsel because Ushio attempts to block same

refusing to consent to a priming lien for a modest DIP Financing and/or refusal to allow use of Debtor assets to fund a retainer or agree to fund such expenses itself.

13. Instead, Ushio's actions have arguably only served to frustrate the efforts of the Debtor's management and other creditors attempting to maximize the value of the Debtor's assets, despite claiming itself to be the largest creditor and largest shareholder. Ushio also asserts it has a right to control appointments to the majority of the Board of Director positions.

14. The Requestors with other lenders agreed to fund $70,000 in DIP financing to help the Debtor retain counsel and restart limited operations to be able to fill orders that were coming in. However, Ushio America, Inc. ("Ushio") refused to consent to a priming lien such financing to the extent Ushio is deemed to have a valid security interest. A fight over such financing with a Debtor which had no counsel was anticipated to generate legal fees and incur costs which could exceed the value of the DIP financing.

15. Airguide Mfg MS, LLC is the landlord of the Clarksdale, Mississippi facility ("Clarksdale"). The Debtor reportedly has over $1 million in inventory stored on the Clarksdale premises.  The Debtor failed to pay rent pre-petition and demand was sent for the rent in arrears as of July 2018 prior to the involuntary petition being filed. On information and belief, neither the Debtor or Ushio has maintained insurance which would cover the inventory in the event of loss. The inventory is reportedly still stored at the Clarksdale premsises.

16. The Requestors believe the appropriate path forward in this case is the appointment of a Chapter 11 Trustee. They plan to file a motion requesting the appointment of a Chapter 11 Trustee by December 14, 2018.  The Requestors believe the Debtor has value, especially its IP. They believe and reportedly so do others that it is best to proceed with the Chapter 11 process restarting limited operations to sell the remaining inventory while Debtor is marketed for sale or

other restructuring. The Chapter 11 process provides more flexibility depending on the types of offers which could be made. The Requestors have heard from groups interested in the purchase of the Debtor's assets.

**B.     Pre-Bankruptcy Events**

17.     Prior to the initiation of the involutory case, American Green Technology, Inc. ("**AGT**") manufactured a patented product called Vidasheield, a UV-C, antimicrobial, environmental air purification system. It combines an ultraviolet germicidal irradiation (UVGI) chamber and air circulating fans with an overhead ceiling light. The patented system uses UV-C light and filtration to draw in and treat environmental air. It reduces bacterial and fungal populations in treated air and reduces settling bacteria and fungi from treated air 24/7/365. Leading hospitals have been very interested in AGT's products. A marketing brochure for the product is accessible at http://vidashield.com/files/VidaShield-Trifold.pdf

18.     Here is a snapshot of the fixture for better context:



19.     Upon information and belief, AGT had an initial valuation of the Debtor's patents and IP, but a final report was never issued due to lack of payment. Upon information and belief, Requestors believe AGT's IP is worth approximately $7 million.

20. In or about August 2017, without notifying AGT, Ushio America, Inc. ("**Ushio**") reportedly began foreclosure proceedings against AGT's assets and IP. At the time, Ushio was purportedly AGT's largest shareholder and controlled several members of AGT's board of directors. *See,* **Exhibit B**. Respondents and other creditors and/or equity holders highly contest the validity and/or enforceability of such alleged security interests and liens. In addition, as an insider, Ushio's security interests are subject to potential avoidance under Chapter 5 of the Bankruptcy Code.

21. Respondents have made certain allegations against Ushio and/or the Ushio appointed Directors including but not limited to: 1) Ushio obtained alleged security agreements and the lien claimed under the security agreements without the knowledge or consent of minority shareholders, who would have opposed Ushio obtaining a lien on the Collateral or any other assets of AGT; 2) Ushio's actions in taking an alleged blanket security interest in all assets of AGT, including critical intellectual property, on a very short term note when it knew that AGT would not be able to repay within that time frame, as well as cross-collateralizing previously unsecured debt, constituted bad faith, shareholder oppression, and breach of fiduciary duties owed to AGT and its other shareholders; and 3) that Ushio intentionally interfered with AGT's ability to develop, market, and sell its products and to obtain additional funding, presumably to push AGT into an untenable financial situation so that Ushio could attempt to obtain AGT's assets, in particular it's patents, for Ushio's own through foreclosure or liquidation.

22. Allegedly, as a result of Ushio's actions, AGT was unable to continue to meet its obligations and was forced to stop operating which is believed to diminish the value of the Debtor.

23. The Debtor has numerous unsecured noteholders and non-insider equity owners.

C.     **Post-Bankruptcy Events**

24.     An involuntary Chapter 11 case was filed against AGT on August 28, 2018 (the "**Petition Date**") by Airguide MFG MS, LLC, Dave Peterson and LAI Family Investments (collectively the "Petitioning Creditors"). (Docket No. 1). An Order for Relief was entered on October 2, 2018 (the "Relief Date"). (Docket No. 17). Requestors are two of the Petitioning Creditors.

25.     After the commencement of the case, several creditors combined funds to provide a potential DIP Loan to the Debtor. The DIP Lenders tendered $70,000 to proposed Debtor counsel to hold in trust with the agreement that if the financing was approved it would be to fund a retainer for Debtor's counsel and for the expenses to continue limited operations of the Debtor for a couple months so AGT could work towards a sale of its business and IP.

26.     As part of this process, Ushio was conferred with regarding the DIP Lenders' requirement that they receive a priming lien on AGT's assets to provide the financing. Ushio would not agree to same or the Debtor's use of the alleged cash collateral which could be generated from the sale of the inventory.

27.     A call was held on November 27, 2018 to discuss potential DIP Financing which included Ushio's counsel to determine Ushio's position. On that call, the parties learned that the Debtor had paid employees post-petition without approval of the Court to use cash collateral. On November 28, 2018, Ushio filed a *Notice of Non-Consent to Unauthorized Use of Cash Collateral or Disposition of Collateral.* (Docket No. 24) ("Notice"). In the Notice, Ushio claims liens and security interests in substantially all of AGT's assets and cash collateral. Arguably, the Landlord's statutory lien provided for under Mississippi law primes Ushio's security interest in the inventory.

28.     On information and belief, after Debtor's President learned of his error in paying AGT's employees post-petition payroll, he reimbursed the Company for the funds which were paid out.

29.     There is reportedly still a high demand for the Debtor's product. Even post-petition, there has been continued interest for potentially large orders by prominent hospitals and other end users.  Those familiar with the Debtor's business, potential for marketing the product, and technology involved in the product have opined that Chapter 11 would be preferred path to maximize recovery for all stakeholders.

30.     The Requestors acknowledge that the appointment of a Chapter 11 Trustee is advisable to remove conflicts the management and/or Board may have and to help facilitate a transition to turnaround this business and/or selling of the assets.

**D.     The Requestors' Subpoena and Ushio's Motion to Quash**

31.     On November 30, 2018, the Court set a status conference to determine whether this case should be dismissed or converted (the "**Status Conference**").

32.     Accordingly, in anticipation of the hearing, on December 5, 2015, Requestors filed notice of its intent to serve a subpoena duces tecum upon Ushio for certain documents related to AGT and this bankruptcy case in compliance with Fed. R. Civ. P. 45(a)(4).  (Docket No. 28).  On December 6, 2018 the subpoena duces tecum was served on Ushio (the "**Subpoena**").  The Subpoena requested documents by December 14, 2018.

33.     Ushio's counsel conferred with Requestors' counsel, Ms. Garza, via telephone demanding the subpoena be withdrawn without raising any specific concerns regarding specific requests and threatening sanctions if the subpoena was not withdrawn.  Undersigned counsel then followed up conferring further via e-mail. *See,* **Exhibit C.**

34. On December 11, 2018, Ushio filed its *Emergency Motion to Quash the Subpoena Duces Tecum of Airguide Mfg MS, LLC and Dave Peterson and Request for Sanctions* (the "**Motion to Quash**") alleging that the subpoena was a Rule 2004 request when it was clearly a Subpoena Duces Tecum under Rule 45.

## LAW AND ARGUMENT

35. In the Motion to Quash, Ushio asserts that the Subpoena should be quashed for the following reasons: (1) there is no good cause for discovery at this time; (2) Requestors failed to comply with LRB 2004-1; (3) the Subpoena provides insufficient time to respond; and (4) the Subpoena is issued for the purpose of harassment and is unduly burdensome. Ushio fails to support any of these arguments and the Motion should be denied and the Requestors' awarded reasonable legal fees for responding to the Motion.

36. Federal Rule of Civil Procedure 45 "explicitly contemplates the use of subpoenas in relation to non-parties" and governs subpoenas served on a third party, such as Ushio, as well as motions to quash or modify or to compel compliance with such a subpoena. *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009). Federal Rule of Civil Procedure 34 governs requests for production of documents and provides, "[a]s provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection." FED. R. CIV. P. 34(c).

37. Bankruptcy Rule 9016 provides that subpoenas may be issued in bankruptcy cases pursuant to Federal Rule of Civil Procedure 45, and applies in all adversary proceedings, contested matters, contested or involuntary petitions, Rule 2004 examinations and all other matters in a bankruptcy case in which testimony may be compelled. 10 Richard Levin & Henry J. Sommer, Collier on Bankruptcy ¶ 9016.01 (16th ed. 2018). Rule 45 in turn, governs subpoenas commanding

{282045/00005/01278715.DOCX 1 }    9

attendance to testify, inspection of premises, and/or directing the productions of documents. *See* Fed. R. Civ. P. 45(c).

38. In this case, the pending action was the Court's Order providing that the dismissal and/or conversion of the case may be discussed at a hearing scheduled for December 18, 2018.

39. A Subpoena is appropriate when there is a pending action. Fed. R. Civ. P. 45(a)(2).

40. Rule 9002 defines "action" as "an adversary proceeding or, when appropriate, a contested petition, or proceedings to vacate an order for relief or to determine any other contested matter." Fed. R. Bankr. P. 9002(1). The December 18, 2018 hearing is noticed to potentially discuss dismissal or conversion, as well as contemplates the potential for an evidentiary hearing. Dismissal or conversion of a case is an "action" under Bankruptcy Rule 9002; and, dismissal would also render an Order for relief vacated. Further, Ushio's *Notice of Non-Consent to Unauthorized Use of Cash Collateral or Disposition of Collateral* (Doc. No. 24) could also be construed to be a pending "action" allowing for a subpoena duces tecum.

41. The Subpoena was issued in contemplation of the Status Conference where the Court informed the parties that dismissal or conversion will be at issue.

42. Requestors assert the document requests in the Subpoena are wholly relevant to the proceeding. There is nothing in the rules that requires a conference before sending a Subpoena Duces Tecum. The subpoena was not issued under Rule 2004.

**A. Cause Exists for Subpoena**

43. Ushio asserts that cause does not exist to request the documents at this time. If a party is conducting an examination under Bankruptcy Rule 2004 which is not the situation in this case, they must show "good cause" for the examination by establishing that the proposed examination "is necessary to establish the claim of the party seeking the examination, or . . . denial

of such request would cause the examiner undue hardship or injustice." *In re SunEdison, Inc.*, 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017). In this case, the subpoena is a Subpoena Duces Tecum under Rule 45.

44. In evaluating the request, the court should consider the totality of the circumstances and balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination. *In re Countrywide Home Loans*, 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008); *In re AOG Entm't, Inc.*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016). Inquiries that are "tightly-focused on the creditor's relationship with a particular debtor will require a relatively low level of good cause because they represent a low level of intrusion into the creditor's business affairs and a low risk of abuse." *In re Countrywide Home Loans*, 384 B.R. at 393 (Bankr. W.D. Pa. 2008).

45. The Subpoena to Ushio is tightly focused on Ushio's relationship with the Debtor.

**B.  AGT Did Not Fail to Company with LBR 2004-1**

46. In light of the Court's Order noting dismissal and conversion are issues to be addressed at the December 18, 2018 status conference, Requestors assert the documents requests are not subject Bankruptcy Rule 2004 or that the requirement to confer under Rule 2004 applies to this case. Given the possibility that the case could be dismissed or converted on December 18, 2018, the Requestors issued the Subpoena under Rule 45 on an expedited basis. The requested records should be no surprise to Ushio and should be readily available for production.

**C.  The Time for Production was Adequate Given the December 18, 2018 Hearing.**

47. Ushio also objects because the subpoena gave less than 14 days to respond. The Subpoena was issued on an expedited basis as a result of the Status Conference where AGT's bankruptcy case could be dismiss or converted. The documents should be readily available and

kept as part of Ushio's regular business practices. In addition, the Requestors offered to work with Ushio on the production date as shown by Exhibit C.

48. The reasonableness of the time period depends on the facts and circumstances of a particular case. Courts have determined that notice of a few days may be reasonable. *Recursion Software, Inc. v. Interactive Intelligence, Inc.,* 2010 U.S. Dist. LEXIS 113827, *21-22 (N.D.Tx. 2010) *citing to See, e.g., Leroy v. Houston*, 906 F.2d 1068, 1073 (5th Cir. 1990) (nine-day notice reasonable); J*ones v. United States,* 720 F. Supp. 355, 366 (S.D.N.Y. 1989) (eight-day notice reasonable); *Pearl v. Keystone Consol. Indus., Inc.*, 884 F.2d 1047, 1052 (7th Cir. 1989) (six-day notice reasonable); *Harden v. Carlton,* 1998 U.S. Dist. LEXIS 20697, 1998 WL 34024163, at *1 (N.D. Miss. Nov. 24, 1998) [*22] (five-day notice reasonable); *FAA. v. Landy,* 705 F.2d 624, 634-35 (2d Cir. 1983) (four days reasonable).

**D.    The Subpoena is not Unduly Burdensome or Harassing.**

49. Ushio asserts that the requests are unduly burdensome and harassing without anything substantive to support such allegations. Ushio has the burden to establish that the requests are unduly burdensome or harassing. Ushio has failed to meet its burden.

50. To the contrary, the Requestors made special effort in the instructions to make production as cost effective has possible and to reduce the burden in responding. The instructions for responding to the document requests show a concerted effort to limit the burden on Ushio to produce records. For example:

- The instructions make it clear that the requests are not seeking privileged documents. *See*, **Exhibit A** which is the subpoena and which is also filed at Doc. No. 30, p. 10 ¶ 1.

- If records are considered confidential, the instructions provide the Requestors will agree to a non-disclosure agreement. Exhibit A, p. 10 ¶ 1

- If any documents are withheld from production on the alleged grounds of privilege or immunity (whether under common law, statute or otherwise), you should confer with Requestors' counsel to agree on a cost-effective approach to respond and/or provide a detailed privilege log.   Exhibit A, p. 11 ¶ 4

- In lieu of producing records, Ushio could have also arranged a time to have the Requestors review and copy records as maintained in their original files. Exhibit A, p. 12 ¶ 7.

- The requests themselves are limited in scope chiefly to the communications between Ushio and the Debtor, alleged interests Ushio has against the Debtor and its involvement in the management of the Debtor.

51.   The requests in the Subpoena relate to Ushio's relationship with AGT including information that would be necessary for Ushio to establish its alleged claim and security interest in AGT's assets.  A summary of the Requestors' requests for production are as follows:

  a. Requests Nos. 1 & 2 request documents related to Ushio's alleged acquisition of an equity interest in AGT in 2015;

  b. Requests 3 through 6 request documents related to Ushio's alleged loans/financing to AGT;

  c. Requests 7 to 9 request documents related to Ushio's purported security interests and liens in AGT's assets and IP;

  d. Requests 10 through 14 ask for documents Ushio might have concerning AGT's financial condition and the valuation of AGT's assets; and

  e. Request 15 asks for information which shows if and how Ushio might have directed AGT's business.

52.   All of the requests in the Subpoena relate specifically to Ushio's relationship with AGT, a topic that is wholly relevant to this case and the best approach for the administration of the Debtor.  Ushio wholesale fails to meet its burden in alleging the requests are unduly burdensome, particularly because nearly all of them are necessary to establish Ushio's claim against AGT and its Estate. Ushio claims it has an interest in all cash collateral as well as a priming lien over most assets.

53. This case is at a critical point and the Court issued its Order around the same time further discussions among the parties reached a futile level. However, Requestors respectfully suggest a Chapter 11 Trustee would be better than conversion or dismissal. A Chapter 11 Trustee has more flexibility for the Debtor and could help preserve the value of the asset as a Plan process could provide options not available in Chapter 7.

**E.     Sanctions Are Inappropriate and the Court Should Direct Production of Documents.**

54. Based on the foregoing, Requestors assert that sanctions are inappropriate in this matter because it complied with Rule 45. Instead, the Court should deny Ushio's Motion to Quash and require Ushio to produce documents in compliance with the Subpoena. In addition, the Requestors would suggest the Court grant the Requestors reasonable attorney's fees in responding to the Motion to Quash in the amount of $2,500.

## ADMISSIONS AND DENIALS

55. The allegations of paragraph 1 of the Motion are denied. Ushio is fully aware that actions have occurred in the Bankruptcy including but not limited to efforts to sell inventory with potential offers received by management; unsuccessful efforts to negotiate DIP Financing and use of cash collateral; communications with potential brokers interested in the Company; numerous proof of claims being filed; order by the Court setting a conference for December 18, 2018, etc. Ushio knows it blocked the Debtor's ability to retain the prior consulted proposed counsel which was present at the hearing on October 2, 2018. Ushio knows it has not consented to the sale of inventory post-petition and that the Debtor's management was getting orders and speaking to others about the potential sale of the Debtor's assets but trying to restart limited operations to make the Debtor more appealing to potential buyers. Ushio knows it did not respond on other inquiries as well.

56. The allegations of paragraph 2 of the Motion are denied. There is a pending action with a hearing set for December 18, 2018 which is contemplated to be an evidentiary hearing. Ushio is aware that the discovery request was only sent after that hearing was set.

57. The allegations of paragraph 3 of the Motion set forth unfounded assumptions by Ushio without any supporting basis. The allegations are denied as the subpoena on its faces shows it is a subpoena duces tecum under Rule 45.

58. The allegations of Paragraph 4 of the Motion are legal conclusions. The Requestors admit that jurisdiction is proper under 28 U.S.C. 1334 and this is a core matter under 28 U.S. C. 157.

59. The allegations of Paragraph 5 of the Motion set forth legal conclusions and are denied. Rule 2004 is inapplicable to the subpoena duces tecum.

60. The allegations of Paragraph 6 are admitted except the allegation that nothing has occurred in the case is denied.

61. The allegations of Paragraphs 7 through 16 of the Motion assert legal arguments and need not be admitted or denied but out of an abundance of caution are denied.

WHEREFORE, Requestors ask that the Court deny Ushio's Motion to Quash; require Ushio to produce the documents itemized in the Subpoena; grant attorney's fees to the Requestors in the amount of $2,500 for responding to this Motion; and, for such other and further relief to which Requestors may be entitled in law or equity.

DATED: December 13, 2018

Respectfully submitted,

HOOVER SLOVACEK LLP

By: */s/ Deirdre Carey Brown*
DEIRDRE CAREY BROWN
State Bar No. 24049116
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: 713.977.8686
Facsimile: 713.977.5395
brown@hooverslovacek.com

**OF COUNSEL:**
HOOVER SLOVACEK LLP
Vianey Garza
State Bar No. 24083057
garza@hooverslovacek.com
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: 713.977.8686
Facsimile: 713.977.5395

*Attorneys for Requestors*

## **CERTIFICATE OF SERVICE**

I certify that on December 13, 2018, a copy of the foregoing *Response to Ushio America, Inc.'s Emergency Motion to Quash the Subpoena Duces Tecum of Airguide Mfg MS, LLC and Dave Person and Request for Sanctions* was served on the following parties by the following means:

**VIA CM/ECF FILING**

Karl Daniel Burrer on behalf of Creditor Premium Assignment Corporation, burrerk@gtlaw.com, jamrokg@gtlaw.com, parkinsl@gtlaw.com

John James Sparacino on behalf of Creditor Ushio America, Inc., jjsparacino@vorys.com, kbconiglio@vorys.com, mdwalkuski@vorys.com, tlpavlock@vorys.com

Sean B. Davis on behalf of Creditor Moriah Infection Solutions, LLC, sbdavis@winstead.com, mmingo@winstead.com

US Trustee, USTPRegion07.HU.ECF@USDOJ.GOV

                                                 */s/ Deirdre Carey Brown*
                                                 Deirdre Carey Brown